**Bernard BONOSKY, Mary Ellen Bonosky, 606 Kenilworth Avenue, Dayton, Ohio 45405, Plaintiff,**

v.

**David Wayne ALLEN, 310 Phillips Street, Yellow Springs, Ohio 45387, Defendant.**

**In the Matter of David Wayne ALLEN, Debtor.**

Adv. No. 3–81–0449.
Bankruptcy No. 3–81–01382.

United States Bankruptcy Court, S.D. Ohio, W.D.

Dec. 14, 1982.

Peter J. Donahue, Dayton, Ohio, for plaintiff.

Gerald E. Schlafman, Fairborn, Ohio, for debtor.

James E. Warren, Springfield, Ohio, trustee.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

## PRELIMINARY PROCEDURE AND FINDINGS OF FACT

This matter is before the Court upon the pleadings, and the evidence adduced. At the conclusion of the trial, the court made a bench finding on the facts that the burden of proof had not been sustained by Plaintiff to establish either an intent by Defendant to defraud or deceive the Plaintiff or that Plaintiff placed any reasonable or justifiable reliance upon the representations made by Defendant of an intended business incorporation pursuant to the Ohio statutes.

The facts reveal, on the contrary, that Defendant not only lacked an intent to deceive, but was the victim or product of his own lack of business acumen and judgment. In attempts to raise start-up capital for the business venture involved, his knowledge of business needs and the demands of the market place were obviously credulous and naive.

Decision was reserved for a later more mature determination of the legal implications from Defendant's failure to file a claim of exemption or application for registration of solicited securities from the Ohio Division of Securities prior to accepting funds from prospective investors and for selling securities without ever being licensed as a security salesman, until citations of pertinent statutory requirements and case precedents could be submitted in behalf of the parties for analysis on the question of bankruptcy debt dischargeability.

Having found as a matter of fact that the Defendant did not commit acts of common law fraud because of a failure to find the necessary intent from the evidence adduced, it is necessary to examine the facts pursuant to the *ratio decidendi* in this Court's decision in *Indiana Insurance Company et al. v. Roudebush (In re Roudebush),* Case No. 3–80–03809, Adv. No. 3–81–0061 (at Dayton, unreported).

The Defendant edited and published a magazine ("Health Street Journal"). A "Premier Issue" was published in October, 1978. The copyright was owned by NAAM Institute, Inc., a non-profit corporation organized under the Ohio statutes, with offices at 115 W. Main Street, Medway, Ohio. This corporation was dissolved upon approval of the Office of the Secretary of State of Ohio on October 24, 1979. After the dissolution, the Defendant continued to serve as "publisher" of the journal.

A scheme was conceived and pursued to "reorganize" a corporation for profit and to seek $100,000.00 in operating capital. The principals then contacted several loan or investment "Consultants." One Robert R.

Allabastro was employed on 26 July 1979 "to arrange a loan or locate an investor," as exclusive agent for sixty (60) days for a 5% commission. A fee of $5,000.00 was paid to Allabastro upon executing the agreement who would then undertake "to arrange a loan or locate an investor" for $600,000.00. Similar efforts to raise capital were pursued from "foundations," etc. Allabastro and another "Consultant" gave Defendant encouraging "reports" until as late as 12 August 1981.

Plaintiffs got involved through one William Cochrane, a life insurance agent and acquaintance who went into the Journal enterprise as "sales manager" to solicit funds. He contacted several persons in 1979 and 1980 to solicit funds. He obtained $10,000.00 from Plaintiffs on 24 September 1979 and $4,000.00 on 3 January 1980. They were promised the typical fast profit from the investment and corporate stock. Defendant confirmed the deals with Cochrane, as follows:

September 25, 1979

Mr. and Mrs. Bernard Bonosky
606 Kenilworth Avenue
Dayton, Ohio 45405
Dear Mr. and Mrs. Bonosky:

This letter is confirmation of the offer that Mr. William Cochrane made you in behalf of the Health Street Journal. In return for your ten thousand dollars ($10,000) we will treat that as a loan/journal percentage combination. You will receive twenty thousands dollars ($20,000) in ninety (90) days and three percent (3%) of the Health Street Journal's Stock.

We thank you for helping us at this time, and we welcome you aboard the most exciting new Health Magazine in the Nation. May the Grace of God be with both of you, and I look forward to meeting you in the near future.

Respectfully yours,
[S]
DAVID WAYNE ALLEN
Publisher & Editorial Director

January 3, 1980

Mr. and Mrs. Bernard Bonosky
606 Kenilworth Avenue
Dayton, Ohio 45405
Dear Mr. and Mrs. Bonosky:

This letter is confirmation of the new offer that Mr. William Cochrane made to you on behalf of the *Health Street Journal.* In return for your four thousand dollars ($4,000.00) you will receive eight thousand dollars ($8,000.) in sixty (60) days.

We thank you once again for helping us at this time. May the Grace of God be with you both, and I continue to look forward to meeting you in the near future.

Respectfully yours,
[S]
DAVID WAYNE ALLEN
Publisher & Editorial Director

No *de jure* corporation was ever organized and thus no stock was ever issued. The funds were spent for business expenses and for salaries and living expenses of Defendant and Cochrane.

The checks from Plaintiffs were made payable to "Health Street Journal." Neither Defendant nor William Cochrane was ever licensed by the Division of Securities, of the Ohio Department of Commerce, as securities salesman. A claim of exemption or application for registration was never filed in behalf of Health Street Journal.

The Defendant lists in his schedules of unsecured creditors at least seven other investors who contributed funds. At least three of them received confirmation from Defendant signed as "Incorporator and Promoter," which reads, as follows:

Mr. James B. Chones
Mr. Richard H. Harvey
Mr. Alfred A. Lee
3285 Chadbourne Road
Shaker Heights, Ohio 44120
Dear Messers. Chones, Harvey and Lee:

This letter is given in connection with the incorporation of the Health Street Journal (hereinafter called "Corporation") which is to be a corporation for profit organized under the laws of the State of Ohio.

As an inducement to secure your services in the publication of the Health Street Journal and in consideration of the obligation assumed by each of you in connection therewith, the undersigned as promoter and incorporator hereby warrants, represents and agrees as follows:

(1) Upon formation of the Corporation you each will receive three percent (3%) of the voting common stock to be issued in accordance with the laws of the State of Ohio.

(2) If the Corporation fails to secure the $600,000 contemplated then you shall collectively be entitled to receive forty percent (40%) of the voting common stock to be issued. (*Corporations shall have 60 days to secure $600,000; if unable to do so that you shall have the option* *

(3) Each share of stock that you receive shall have preemptive rights.

* *to buy or sell the 40% at a minimum price of $600,000 for 60 days.*)

(4) Upon the formation of the Corporation the appropriate stock certificates shall be issued and the names of each of you shall be recorded in the corporate records.

Very truly yours,
[S]
DAVID WAYNE ALLEN
Incorporator and Promoter
Dated: November 9, 1979
1:44 P.M.

## DECISION AND ORDER

The question reserved and now to be examined in connection with bankruptcy law principals pertains to the legal consequences of Defendants obtaining funds from Plaintiffs in violation of the Ohio Securities Laws.

One pertinent statute as cited by Plaintiffs is Section 1707.44 of the Revised Code of Ohio, which provides *inter alia,* as follows:

"(A) No person shall engage in the business of action as broker for others in the purchase or sale of securities, sell securities, cause them to be sold, offer them for sale, cause them to be offered for sale, or engage in the business of buying, selling, or dealing in securities otherwise then in transactions through or with a licensed dealer, unless the securities are of a kind specified in division (G) or (I) of section 1707.02 of the Revised Code, the transactions are of a kind specified in divisions (B) to (L) and (O) to (R) and (U) of section 1707.03 of the Revised Code, except when a commission, discount or other remuneration is paid or given in consideration with transactions enumerated in divisions (O) and (Q) of section 1707.03 of the Revised Code, or in section 1707.04 or 1707.06 of the Revised Code; or the transactions are exempt under section 1707.34 of the Revised Code, without being licensed by the division of securities.

(B) No person shall knowingly make or cause to be made any false representation concerning a material or relevant fact, in any oral statement or in any prospectus, circular, description, application, or written statement, for any of the following purposes:

\* \* \* \* \* \*

(4) Selling any securities in this state.

(C) No person shall knowingly and intentionally sell, cause to be sold, offer for sale, or cause to be offered for sale, any security which comes under any of the following descriptions:

(1) Is not exempt under section 1707.02 of the Revised Code, nor the subject matter of one of the transactions exempted in sections 1707.03, 1707.04, and 1707.34 of the Revised Code, has not been registered by description, coordination, or qualification, and is not the subject matter of a transaction that has been registered by description:"

The penalties of violations of the Ohio Securities Act are imprisonment for "not less than one or more than five years," or a fine of "not more than five thousand dollars or both."

It was previously rationalized by this Court in *Indiana Insurance Company v. Roudebush, supra* that a violation of the Ohio Statutes licensing insurance agents did

not impute *ipso facto* the necessary elements of a non-dischargeability offense in a fiduciary context, under 11 U.S.C. § 523(a)(4). Whether the debts are based on general fraud as excepted from discharge by Code Section 523(a)(2)(A) or particular types of fraud as excepted by Code Sections 523(a)(2)(B) and (a)(4) the elements to be proven are the same. As mentioned in *Roudebush,* a nondisclosure amounting to a misrepresentation can satisfy the element of misrepresentation if there is a legal duty to disclose from a confidential relationship. See *In re Harris,* 458 F.Supp. 238, affd. 587 F.2d 451 (CA 9, 1978), cert. den. 442 U.S. 918, 99 S.Ct. 2840, 61 L.Ed.2d 285. If the sale of corporation stock in a corporation never organized and by persons not licensed to deal in securities meets this test, then the question arises, as whether or not there was a reasonable reliance thereon and the reliance was a substantial or material factor in the payment of the funds, although not exclusive. See for instance, *In re Clancy,* 408 F.2d 899 (CA 10, 1969).

In both respects, based upon well established legal precedents, the facts herein mandate denial of the complaint of Plaintiffs. For the sake of brevity, the following quotation from 1A *Bankruptcy Service, Lawyers Edition* § 7:109, at page 104, will suffice:

> "It has been indicated that the type of fraud which will prevent a discharge of a debt in bankruptcy is that fraud committed through fraudulent misrepresentations of fact or by such conduct or artifice having fraudulent purpose as will throw a creditor off his guard and will cause him to omit any inquiry or examination which he would otherwise make. Thus, the fraud which will serve to except a debt from discharge is the type involving moral turpitude or intentional wrong, and there can be no more imputation of bad faith on the part of the debtor. Similarly, false pretenses ·as contemplated under 11 USCS § 523(a)(2) must also be a kind involving moral turpitude or intentional wrong, and fraud as implied in law would be insufficient to meet this standard. A false representation or

misrepresentation must be established by a showing of fraudulent intent or reckless disregard for the truth tantamount to a willful misrepresentation in order to bar discharge. Statements made with a reckless disregard for the truth are sufficient to indicate knowledge of the debtor at the time of the representations that such representations were false; therefore, such debts would be nondischargeable. The terms false pretenses or false representations have also been deemed to include any conduct tantamount to fraud and have not been limited to false representations as to one's financial condition. [footnotes, omitted].

See also *3 Collier on Bankruptcy* 15th Ed. ¶ 523.09[5].

The evidence adduced does not establish the *scienter* necessary, in light of the extemporaneous, though unrealistic, methods of raising capital by Defendant, and the misguided notion that Defendant derived from his "consultants." Upon the facts this Court is constrained to follow the analysis found in *Wright v. Lubinko,* 4 C.B.C.2d 306, 515 F.2d 260 (9th Cir.1975) (pertaining to California securities law). Consequently, the definitely illegal solicitation and purported sale of securities by Defendant and agents do not negate the burden of establishing an overt fraudulent purpose, under the federal statutes applicable. The Ohio statutes do not place securities dealers in a fiduciary capacity to lessen the burden of proof.

By the same token, adjudication of the alleged fraud in the bankruptcy law context should not necessarily reflect upon the potential prosecution for the criminal violation under Section 1707.44 of the Revised Code of Ohio.

Furthermore, the facts do not sustain the burden of proof imposed on Plaintiffs to establish not only actual reliance upon the securities sale, but that such reliance was reasonable under the circumstances. See *Neal v. Clark,* 95 U.S. 704, 24 L.Ed. 586 (1878) codified in 11 U.S.C. § 523(a)(2)(A); *In re Smith,* 424 F.Supp. 858; *Sweet v.*

*Ritter,* 263 F.Supp. 540; and Restatement (2d), Torts, § 402B, comment j. On the contrary, the facts indicate that Plaintiffs were motivated by the hope of an inordinate profit and return on investment, i.e. doubling their investment in only 90 days. Such a noble scheme assumes a risk of loss as here suffered.

It is noted that the letter from Defendant to Chones, et al. specifically refers to the formation of a corporation *in futuro.* Even though there is no evidence that Plaintiffs received the same letter, its contents do reflect upon the state of mind of Defendants at the time. The receipt of corporate stock in a corporation to be organized was only icing upon the cake.