In re William K. WYATT, Jr., Mildred B. Wyatt, Debtors.

Vernon O. WARD, Raelene F. Ward, Plaintiffs,

v.

William K. WYATT, Jr., Mildred B. Wyatt, Defendants.

Bankruptcy No. 87–02565–NT.
Adv. No. 87–1519–NT.

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

May 10, 1988.

John R. Lomax, Fine, Fine, Legum & Fine, Virginia Beach, Va., for plaintiffs.

Robert G. Byrum, Shames & Byrum, P.C., Chesapeake, Va., for debtors.

## MEMORANDUM OPINION AND ORDER

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

### INTRODUCTION

The plaintiffs initiated this adversary proceeding under Section 523(a)(2) of the Bankruptcy Code by complaint on November 25, 1987. The complaint alleged that the debtors knowingly sold to the plaintiffs residential real estate that was termite infested and damaged. The plaintiffs sought $50,000.00 in compensatory damages and $25,000.00 in punitive damages. The debtors denied these allegations by answer and sought a dismissal of the adversary proceeding.

The Court conducted a trial in this adversary proceeding on March 10, 1988, and the Court received evidence in the form of testimony and exhibits at that time. Upon the conclusion of the trial, the Court took the matter under advisement. The following opinion sets forth the Court's findings of fact and conclusions of law as prescribed by Bankruptcy Rule 7052.

### FINDINGS OF FACT

1. The debtors, William K. Wyatt, Jr. and Mildred B. Wyatt, filed a voluntary chapter 7 petition in Norfolk, Virginia, on September 8, 1987.

2. At the time of filing their petition, the debtors owned and resided in a home located at 1229 Flobert Drive, Virginia Beach, Virginia ("the home"). They had purchased this real property from the plaintiffs several years earlier.

3. In May 1986, the home had been inspected for termites by a representative of AA Southern Pest Control Company ("AA Southern"). No evidence of termite infestations was found, and AA Southern at that time issued to the debtors a one year renewable termite protection warranty.

4. The plaintiffs, a military family who had originally sold the property to the debtors and moved to another part of the country, planned to return to the Virginia Beach area in 1987. They contacted the debtors in January 1987 and learned that the home was on the market.

5. The debtors and plaintiffs entered into a contract dated January 18, 1987, providing for the sale of the home to the plaintiffs. The handwritten contract was prepared by the plaintiff, Mrs. Ward, and contained no warranty or representation by debtors concerning the condition of the property; specifically, the agreement contained no provision relative to the possible existence of termite infestations in the home, nor did the contract require any termite certification from the sellers at settlement. Testimony established that the debtors made no verbal representations concerning termites or the condition of the property.

6. Although the mortgage financing of the plaintiffs' purchase was not made a condition of their purchase contract, the parties were aware that financing would be

necessary. As a part of obtaining their mortgage loan the plaintiffs were required to obtain a "termite letter" assuring that the premises were not infested or damaged, and the plaintiffs requested AA Southern to issue the termite certification for this purpose. AA Southern made an inspection of the property, found no termites or termite damage and issued its standard thirty day termite certification letter dated April 19, 1987.

7. The plaintiffs advised the debtors prior to settlement that they wished to have the premises inspected by Homebuyers Inspection Service, Inc. ("Homebuyers"), a company specializing in inspecting homes for purchasers of real estate, primarily for mechanical (i.e., electrical, plumbing, air conditioning, heating, etc.) and structural problems. Homebuyers does not inspect for termites.

8. Although the parties' contract contained no provision for an inspection of the premises or any remedy if defects were found, the debtors consented to allow the inspection. The debtors were not fully cooperative in making the home available for inspection; however, Homebuyers was ultimately allowed to inspect the premises prior to settlement.

9. The inspection of the premises by Homebuyers did not reveal the existence of termites or any structural damage caused by termites.

10. Settlement under the purchase and sale agreement was scheduled for April 24, 1987. The plaintiffs had returned to their home in California after executing the purchase agreement and had not had adequate opportunity to see the property since January. The plaintiffs asked the debtors to permit a final walk-through before settlement, to which the debtors agreed, and just prior to settlement the parties went through the house for a final inspection. Although at the time of this inspection the plaintiffs had already had the electric power to the premises placed in their names, the power was not on. During this inspection the plaintiffs noticed an area on the kitchen ceiling where the paint was glossy (shiny) and different from the flat finish covering the rest of the ceiling. Closer inspection of this glossy area revealed a series of "pin holes". The exact nature and cause of these pin holes has not been established by the record of this proceeding. Because of the plaintiffs' concern over the pin holes, the parties immediately called for further termite inspection by AA Southern.

11. On the same day as the plaintiffs found the pin holes, Mr. Jerry J. Thompson ("Thompson") of AA Southern came to the property and inspected the area in question; he discovered a termite infestation and resulting damage caused by the infestation. Thompson agreed that his company was responsible for repairing this damage and treating for the termite infestation. Thompson wrote a letter to the plaintiffs dated April 24, 1987, stating as follows:

"Termite structural damage has been found at above address and structural damage will be repaired at the earliest possible date."

12. Based upon the assurances of Thompson that AA Southern would repair the damage, the plaintiffs elected to proceed to settlement as scheduled on April 24, 1987.

13. Subsequent to settlement, the house was treated for the termite infestation, and the damages in the kitchen area were repaired by AA Southern. The necessity for this work delayed the plaintiffs' moving into the property until May 26, 1987. In the meantime, they had stored their furniture in California.

14. Shortly after moving in, the plaintiffs observed "swarms" of termites both inside and outside the house, for which further treatment was required. In September 1987, a new infestation of termites was discovered, and plaintiffs engaged A–Active Exterminating Company to treat the property for termite infestation and Tyner Construction Company to repair the newly discovered termite damage behind paneling around a fireplace.

15. Plaintiffs have established that the following expenses were incurred by them

as a result of the termite infestation in the home:

| | |
|---|---|
| (a) Storage of household furnishings pending treatment and repair of damage April, May 1987, | $ 311.00 |
| (b) Termite treatment by A–Active Exterminating Company, September 1987, | $ 260.00 |
| (c) Damage repair, Tyner Construction Co., September 1987 | $ 807.50 |
| (d) Medical expenses incurred by Mrs. Ward as result of mental stress caused by concern over the termite problems | $ 700.00 |
| TOTAL EXPENSES | $2078.50 |

16. Plaintiffs presented evidence that the kitchen repairs arranged by AA Southern in April and May were not properly done in a workman-like fashion and that it will cost an estimated $1197.00 to correct these repairs. However, the Court does not consider this an expense which should be charged to the debtors even if they were to be found liable for the plaintiffs' damages. There is no causal connection between the workmanship of the repairs arranged by AA Southern and the debtors' actions at issue in this adversary proceeding.

### DISCUSSION

The plaintiffs base their dischargeability complaint on Section 523(a)(2) of the Bankruptcy Code which provides in part as follows:

"(a) A discharge under Section 727 ... does not discharge an individual debtor from any debt—

(2) for money, property, services, ... to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud...."

11 U.S.C. 523(a)(2)(A) (West Supp.1987). The plaintiffs' attorney contends that the debtors obtained money from the plaintiffs by false pretenses, false representations or actual fraud by selling them the home described in this opinion. The plaintiffs allege fraud and misrepresentations occurred in that the debtors knew of the existence of termite infestations and termite damage in the home, and yet they failed to disclose these infestations and accompanying damages to the plaintiffs. These allegations of fraudulent conduct, according to the plaintiffs, caused them $50,000.00 in compensatory damages and $25,000.00 in punitive damages.[1]

It is well recognized that the Section 523 dischargeability provisions are to be "strictly construed against the objecting creditor and liberally in favor of the debtor." 3 L. King, *Collier on Bankruptcy*, par. 523.05A at 523–16 (15th ed. 1987); *Schwalbe v. Gans (In re Gans)*, 75 B.R. 474, 481 (Bankr.S.D.N.Y.1987). Additionally, the objecting creditor has the burden of proving that the debt is nondischargeable. *In re Long*, 794 F.2d 928 (4th Cir.1986). These construction tenets of the Bankruptcy Code's dischargeability provisions illustrate the ground rules that an objecting creditor must face in proving a debt to be excepted from discharge in a bankruptcy case.

The standard of proof necessary to establish an exception to discharge under Section 523 has generally been accepted to be the clear and convincing standard. *See, Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577, 1579–80 (11th Cir.1986); and *Fleming v. Preston (In re Preston)*, 47 B.R. 354 (Dist.Ct.E.D.Va.1983). However, a recent Fourth Circuit case indicates that the appropriate standard of proof to be applied under Section 523 is by a preponderance of evidence. *Combs v. Richardson*, 838 F.2d 112 (4th Cir.1988). Even with this reduced standard of proof, the plaintiffs have a difficult burden to carry.

The five elements that a creditor must prove to establish the nondischargeability of a debt under Section 523(a)(2) are:

(1) [T]he debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with

---

1. The Court notes that the plaintiffs' evidence reveals actual damages in the maximum, total amount of $2,078.50. The Court also notes that the plaintiffs' evidence does not support a claim for punitive damages.

the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

*In re Gans,* 75 B.R. at 483 (citing *Sweet v. Ritter Finance Co.,* 263 F.Supp. 540, 543 (W.D.Va.1967)). Therefore, the plaintiffs must prove that the debtors (1) misrepresented the condition of the home, (2) were aware of the termite infestations and damage to the home at the time of sale, and (3) intentionally deceived or failed to disclose to the plaintiffs this damage in connection with the home's sale. This is a burden that the creditors cannot overcome in this proceeding.

The plaintiffs attempt to prove the existence of a misrepresentation through the circumstances and nondisclosures surrounding the home's sale. Under certain conditions a failure to disclose information might be characterized as a misrepresentation within the meaning of Section 523(a)(2)(A). *In re Gans,* 75 B.R. at 484. However, it is undisputed that the debtors made no representations to plaintiffs concerning the existence of termite infestations or termite damage. The contract between the parties, which was prepared by Mrs. Ward, contained no representation or warranties of any kind. And Mrs. Ward acknowledged in her testimony that no verbal representations were made by the debtors. Additionally, Mrs. Ward's testimony and the creditors' pleadings reveal that the Wards were aware of some termite damage prior to going to settlement on the home. Upon assurance by AA Southern that the damage would be repaired, the creditors elected to proceed with the purchase of the home. These facts demonstrate that the creditors entered into the sale with some knowledge of termite infestations problems in the home. Therefore, the creditors have failed to prove a misrepresentation, either direct or indirect, by the debtors to the creditors concerning the condition of the home.

As to proving intent to deceive, courts have recognized that direct proof of fraudulent intent is almost impossible to produce. Therefore, a trial judge may infer an intent to deceive from an examination of the totality of the circumstances or facts placed into evidence. *In re Gans,* 75 B.R. at 478.

In the case at bar, both debtors testified at the trial, and both denied having knowledge of the presence of termite infestations in their home until the discovery by AA Southern just before settlement. Evidence that AA Southern had inspected and found the home free of termite infestations in April 1987, prior to issuing a termite letter for the plaintiffs' mortgage lender, and in May 1986, prior to issuing a one year warranty, support the debtors' testimony.

In the absence of proof of direct fraudulent conduct by the debtors and to counter the debtors' direct testimony, the plaintiffs rely primarily on the following circumstances to establish the requisite knowledge and intent on the part of debtors:

(1) Although plaintiffs had transferred the electrical power in the house to their names, when the parties went through for the final inspection before settlement, the power had been turned off.

It is argued by plaintiffs' counsel that debtors caused the power to be turned off so as to make the house dark and therefore difficult for the plaintiffs to discover any indication of the presence of termites. However, the record here does not reveal how the electric power came to be turned off at the time of the inspection or for what period of time the power was off. The debtors denied any knowledge of this circumstance.

(2) Plaintiffs argue that debtors by applying glossy paint to an area of the kitchen ceiling attempted to cover "pin holes" which were apparently indicative of termite damage. The record does not reveal the exact nature of these pin holes or even whether they were caused by termites or represented a human effort to treat for termites. Both debtors denied having painted the glossy area or other knowledge concerning the pin holes.

(3) One of the plaintiffs' witnesses, a termite control specialist, testified that approximately three years ago he inspected the subject real property and found termites on the grounds outside the house. He further stated that he advised the debtor, Mr. Wyatt, of this condition and recommended that the termites should be treated because it was likely that the infestation would eventually make its way inside the house. The witness said that no treatment was requested by the debtor at that time. At trial Mr. Wyatt testified that he had no recollection of this meeting with the witness.

While the circumstances relied upon to support plaintiffs' argument of fraudulent intent may raise a suspicion that the debtors were aware of the termite infestations, they fail to carry the plaintiffs' difficult burden of proof to establish fraud, particularly in light of the failure of AA Southern to locate the termites in two recent inspections. The Court notes that no evidence was presented at trial concerning the likelihood that given the nature of the infestation the occupants of the home would have been able to observe termites doing damage behind walls.

Since the creditor has failed to prove the first three elements under Section 523(a)(2)(A), this Court need not address the remaining two elements of reasonable reliance and causation of damage.

### CONCLUSION OF LAW

1. This adversary proceeding is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(I), and this Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and the General Order of Reference entered by the United States District Judges of the Eastern District of Virginia.

2. The plaintiffs have the burden under Section 523(a)(2) of the Bankruptcy Code to prove that they have a claim against the debtors proximately resulting from false pretenses or representations or other fraudulent conduct of the debtors.

3. The plaintiffs have not carried their burden of proof of establishing the nondischargeability of their claim under Section 523(a)(2).

Accordingly, the Court finds and it is ORDERED that any claim of the plaintiffs against the debtors arising out of the transaction described in this opinion is discharged.