In re David James **KLAIMAN**, Debtor.

Donna–Lee **McMULLEN**, Plaintiff,

v.

David James **KLAIMAN**, Defendant.

Bankruptcy No. 94–22298.

Adversary No. 95–2058.

United States Bankruptcy Court,
D. Connecticut.

Nov. 12, 1996.

Laurence M. Johnson and Daniel J. Goldberg, Barry S. Zitser, Perakos, Kindl & Zitser, P.C., Hartford, CT, for Plaintiff.

Marina Lee, Law Offices of Marina Lee, Old Saybrook, CT, for Debtor–Defendant.

### MEMORANDUM OF DECISION

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

## I.

### ISSUE

In this core adversary proceeding, Donna Lee McMullen, the plaintiff, seeks to have the court determine that an unliquidated claim which she asserts against David James Klaiman, the debtor, is nondischargeable pursuant to Bankruptcy Code § 523(a)(2)(A) (debt for money "obtained by false representation, or actual fraud" not dischargeable). After a trial, at which both the plaintiff and the debtor testified, and receipt of the parties' post-trial memoranda, the court concludes that the plaintiff has not satisfied her burden of proof and that the asserted claim is discharged.

## II.

### BACKGROUND

The debtor filed a Chapter 7 petition in this court on June 27, 1994, and has received a discharge from his dischargeable debts. While living in Massachusetts in 1988, the debtor formed a corporation known as Omni–Vend, Inc. ("Omni") to operate a business of selling food and drink coin-operated vending machines to persons wishing to own and provision such machines at leased locations in office buildings and commercial areas. The debtor had no prior experience in this undertaking and relied upon information he received from a Canadian manufacturer of vending machines and from an industry periodical known as "Vending Times." Starting in August 1988, Omni placed advertisements in the "business opportunities" sections of Boston newspapers for interested parties to contact the debtor for information on purchasing vending machines.

The plaintiff, in response to one of Omni's ads, first contacted the debtor by telephone in October 1988, and discussed the operation of a vending machine business with the debtor. On October 28, 1988, she met with the debtor at Omni's office to review the various types of vending machines available. The debtor handed her a single typewritten sheet entitled "Average Returns on Investment" ("Investment Sheet"). The Investment Sheet listed the prices of available machines, a stated hypothetical projected monthly, and annual, sales return per machine, and an indication of the number of months it would take to recover the purchase price per machine. For example, the Investment Sheet showed the price of a popcorn machine as $2,650; its average monthly return of $201; its average annual return as $2,412; and, accordingly, 13 months to recoup the investment. The debtor told the plaintiff that he obtained the information on the hypothetical return from industry data and the experience of others.

The debtor also gave the plaintiff a single typewritten sheet entitled "New Distributor Package" ("Package Sheet") which disclosed the bottle or product capacity of various vending machines. The Package Sheet also stated that business cards, service stickers, operation and service training were provided, machines would be delivered and installed on location, and that "secured locations are provided for all machines." The words in quotation meant that Omni would hire a "locator", at Omni's cost, to find suitable locations, for which the locator would secure the plaintiff's prior approval, for the purchased vending machines. The debtor advised the plaintiff that if the initial location did not prove profitable, it was Omni's responsibility to have the locator find a different location. The locator's duties included obtaining from the entity in possession of the location a written "location agreement" in the plaintiff's name, authorizing the placing of the machine on the premises. The machine owner typically paid a percentage of the sale for the space. The debtor advised that any relocation after the first would be at the plaintiff's expense.

The debtor gave the plaintiff the names of two persons presently operating popcorn

vending machines, whom the plaintiff subsequently contacted. The plaintiff indicated an interest in purchasing popcorn vending machines. On the written notes which she made of her October 28, 1988 meeting with the debtor, she indicated that such machines involved "Better return—machine costs less—more risk." Plaintiff's Exh. 5. She also wrote "Guarantee—8 vends per day." *Id.* The debtor testified that he reviewed the Investment Sheet with the plaintiff and advised her that the returns shown on the Investment Sheet were gross, and that overhead costs, such as insurance, repairs and costs of transportation to refill machines with product would have to be taken into account.

After the October 28, 1988 meeting, the plaintiff and debtor spoke several more times over the telephone. On or about December 15, 1988, the plaintiff decided to purchase five microwave popcorn machines and signed Omni's printed purchase agreement for a total price of $13,368.75. The debtor, at the plaintiff's request, added the following paragraph to the purchase agreement: "Omni–Vend will relocate and move machine if after a period of ninety days machine is not vending a minimum of 8 units per day." Plaintiff's Exh. 2. The parties met again on or about January 15, 1989, when the machines were shipped and the plaintiff paid the debtor the balance of the purchase price.

The debtor, on or about February 6, 1989, notified the plaintiff of the five locations for her vending machines. The plaintiff visited the sites, expressed some concern, but agreed to accept the sites since, if unsatisfactory, Omni would relocate the machines. The five machines were in place on February 18, 1989. Omni relocated one machine, at the plaintiff's request, one month later.

On April 13, 1989, the plaintiff wrote to the debtor expressing dismay that the popcorn machines were not showing the projected weekly returns. Plaintiff's Exh. 3. She included a list of proposed new locations for the machines and requested the debtor's assistance in having the locator secure location agreements. The debtor later caused a total of four of the five vending machines to be removed to new locations. The plaintiff personally relocated the fifth machine.

The plaintiff stopped operating three machines within six months and stopped operating the remaining two after 18 months. Since August 1990, the plaintiff has stored the machines in her garage and has made no attempts to sell them. In her complaint filed on March 28, 1995, she alleges that the debtor is liable to her for the entire purchase price for the five Omni machines and requests that such debt be determined nondischargeable because the debtor made fraudulent misrepresentations to her at the time of the purchase.

The plaintiff contends that the Investment Sheet was false and fraudulent in that the figures used by the debtor were not based upon solid data, but only upon limited conversations with the Canadian manufacturer and a review of the contents of the "Vending Times." She argues that she need not prove the debtor had an actual intent to defraud her, but only a showing of recklessness by him to the truth.

The debtor contends that, at most, his representations to the plaintiff were nonactionable opinions and sales puffery, and that there is no basis to conclude that the debtor believed his representations to be false. He asserts that any reliance by the plaintiff on the hypothetical figures for guaranteed daily sales was not justifiable and that the plaintiff has failed to establish the extent of any damages as a proximate result of the asserted misrepresentations.

### III.

### *DISCUSSION*

 "Under § 523(a)(2)(A), 'a debt may be determined nondischargeable based on fraud where the creditor proves that: (1) the debtor made the representations; (2) at the time he knew they were false; (3) he made them with the intention and purpose of deceiving the creditor; (4) the creditor relied on such representations; (5) the creditor sustained the alleged loss and damage as the proximate result of the representation having been made.'" *Harper v. Richey (In re Richey),* 103 B.R. 25, 29 (Bankr.D.Conn.1989). The level of reliance is justifiable reliance. *See Field v. Mans,* —— U.S. ——, 116 S.Ct.

437, 133 L.Ed.2d 351 (1995). The burden of proof on the creditor is to prove each element of the statute by a preponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279, 287, 111 S.Ct. 654, 659–60, 112 L.Ed.2d 755 (1991). Further, " '[e]xceptions to dischargeability are narrowly construed', an approach that implements the 'fresh start policy of the Bankruptcy Code.' " *National Union Fire Insurance Co. of Pittsburgh, PA v. Bonnanzio (In re Bonnanzio),* 91 F.3d 296, 300 (2d Cir.1996) (internal citations omitted). "To be actionable, the debtor's conduct must involve moral turpitude or intentional wrong; mere negligence, poor business judgment or fraud implied in law (which may exist without imputation of bad faith or immorality) is insufficient." *Smith v. Meyers (In re Schwartz & Meyers),* 130 B.R. 416, 422 (Bankr.S.D.N.Y.1991).

■ Under these standards, the plaintiff has not carried her burden of proving each element of § 523(a)(2)(A). Even assuming the debtor was excessively optimistic in his estimate of annual revenue from the machines, the plaintiff has not established that the debtor knew he was making false statements with intent deceive the plaintiff. He gave the plaintiff names of persons to call who operated vending machines and the plaintiff contacted such persons. The plaintiff testified that she believed that the added paragraph to Exh. 2 represented a guaranty by the debtor of sale of eight units per day. However, as Exh. 2 shows, the debtor agreed only to relocate the machines if this number of sales was not achieved. The plaintiff, at trial, described herself as "naive", but the record does not disclose an impulsive and hasty purchase. She consulted others who were operating like machines, and she required the debtor to put his promises in writing. Under these circumstances, the debtor's representations more likely qualify as an expression of opinion and sales puffery than conduct involving moral turpitude or intended wrongfulness. *Cf. Smith v. Meyers,* 130 B.R. at 423 ("To be actionable, the representation must be one of existing fact and not merely an expression of opinion, expectation or declaration of intention.... Also falling within the purview of nonactionable language are those statements which amount to no more than sales 'puffery' upon which reliance should not be placed") (internal citations omitted).

■ The court further finds that the plaintiff has made no effort to quantify her damages. She still retains the machines which she purchased, all apparently in working order, and inappropriately seeks to recover their full purchase price. The court concludes that the plaintiff has failed to establish an adequate foundation to ascertain a fair and reasonable estimate of any loss she sustained as a result of the alleged fraud of the debtor.

## IV.

### CONCLUSION

The plaintiff having failed to prove all of the elements of § 523(a)(2)(A), judgment shall enter for the debtor that any obligation of the debtor to the plaintiff is discharged.

### JUDGMENT

The court having issued a written ruling of even date containing findings of fact and conclusions of law, entering judgment for the debtor, it is

ORDERED, ADJUDGED AND DECREED that judgment shall enter for the debtor that any obligation of the debtor to the plaintiff is discharged.