In re Richard Herman **BOREN**, Beverly Anne Boren, Debtor.

**MAMMOTH CAVE PRODUCTION CREDIT ASSOCIATION, Plaintiff,**

v.

**Richard Herman BOREN, Defendant.**

**Bankruptcy No. 18300258. Adv. No. 1830080.**

United States Bankruptcy Court, W.D. Kentucky.

March 13, 1985.

Charles A. Goodman, Glasgow, Ky., for plaintiff.

Philip Huddleston, Bowling Green, Ky., for defendant.

Henry Dickinson, Glasgow, Ky., Trustee.

## MEMORANDUM OPINION

MERRITT S. DIETZ, Jr., Bankruptcy Judge.

Today we again face the difficult task of passing on the propriety of actions taken by a desperate farmer shortly before he filed his bankruptcy petition. Specifically, we must decide whether this debtor's obligation to Mammoth Cave Production Credit Association (MCPCA) is dischargeable under the provisions of § 523(a)(6) of the U.S. Bankruptcy Code.

For several years the debtor, Richard Boren, had an ongoing commercial relationship with MCPCA. In return for loans from MCPCA, Boren granted a mortgage on his farm, security interests in his farm machinery, agricultural equipment, and all his growing or grown crops.[1]

In April of 1981, Boren gave MCPCA a security interest in his 1981 crop. The agreement called for Boren to repay MCPCA $60,550, plus interest, in April of 1982. The only payment the debtor made

---

**1.** The Federal Land Bank held the first mortgage on the plaintiff's home and many other creditors had purchase money security interests on various pieces of Boren's farm machinery and equipment.

on this debt was $18,417, which represented proceeds from the sale of wheat by Boren. MCPCA was informed by Boren that the remainder of his 1981 crop was in storage at the time the April, 1982 payment came due. On April 8, 1982 MCPCA granted Boren an extension of time on the repayment of his debt. The extension agreement deferred payment of Boren's loan until July of 1982 and required Boren to pay MCPCA $73,764. At the time this extension was granted, Boren represented to MCPCA that the value of his stored grain was $67,912.

In July of 1982 Boren failed to make the required payment to MCPCA. After this default, a field office manager for MCPCA investigated the matter and discovered that no grain owned by Boren was stored in the local grain elevators. Acting on this information, the office manager questioned Boren about the whereabouts of his 1981 crop.

Initially Boren claimed that the grain was stored in the name of another person. However, upon further questioning, Boren admitted that the 1981 crops he had previously claimed to have stored, had actually been sold.[2] Boren stated that the reason he lied about the existence of the stored grain was that he feared that if MCPCA knew that he had not actually stored his 1981 crop, his loan with MCPCA would not have been renewed and he would have had no funds with which to grow a 1982 crop. The funds generated by the sale of Boren's

1981 crop were used for the necessary living expenses of Boren's family and to pay various creditors.[3]

In June of 1983 the debtor and his wife filed a voluntary petition under Chapter 7 of the Bankruptcy Code. MCPCA initiated the present nondischargeability action shortly thereafter.

\* \* \*

■ The issue before the court is whether Boren's actions with respect to the April 1981 security and loan agreements and the April 1982 extension agreement constituted a "willful and malicious injury by the debtor to another entity or to the property of another entity"[4], so as to render his debt to MCPCA nondischargeable. After carefully reviewing the facts of this case it is plainly evident that Boren's conduct constituted a "willful and malicious" injury to MCPCA and that his debt to them should be excepted from discharge under the provisions of § 523 of the Bankruptcy Code.

■ It is undisputed that Boren willfully[5] sold his 1981 crop and failed to pay all of the proceeds to MCPCA as was required by their security agreement.[6] The only defense advanced by the debtor in this action is that he did not "maliciously"[7] injure MCPCA by his actions. Although the question of a debtor's malice is always a difficult issue for a bankruptcy court to deal with, the facts[8] of this case clearly

---

2. The amount Boren received for his 1981 crop was approximately $76,000.

3. During 1981 Boren used his crop proceeds to pay the Federal Land Bank, Simpson County Bank, John Deere and MCPCA. Boren stated that he also used $13,000 of crop proceeds for living expenses.

4. 11 U.S.C. § 523(a)(6).

5. "Willful" means deliberate and intentional. A mere technical conversion is not within the meaning of § 523(a)(6). *In re Stephens,* 26 B.R. 389 (Bkrtcy.W.D.Ky.1983).

6. The phrase "willful and malicious injury" as used in § 523(a)(6) includes a willful and malicious conversion of the property of another. *In re Cummins,* 11 B.R. 222 (Bkrtcy.E.D.Tenn. 1981); *In re McCloud,* 7 B.R. 819 (Bkrtcy.M.D. Tenn.1980); H.R.Rep. No. 95–595, 95th Cong.,

1st Sess. 365 (1977); U.S.Code Cong. & Admin. News, pp. 5787, 6320 (1979).

7. In *In re William D. James,* 42 B.R. 265 (Bkrtcy. W.D.Ky.1984) we defined malicious as "something which is wrongful and done intentionally without just cause or excuse."

8. The party seeking to have a debt excepted from discharge under § 523(a)(6) bears the burden of proof by a fair preponderance of the evidence. *In re Stephens,* 26 B.R. at 390. *See also Lines v. Frederick,* 400 U.S. 18, 19, 91 S.Ct. 113, 114, 27 L.Ed.2d 124 (1970). The existence of malice in a case is determined by an examination of the debtor's acts. *In re Cooney,* 18 B.R. 1011 (Bkrtcy.W.D.Ky.1982) ("The search for malice is always a perplexing exercise, dealing as it does with a brooding malevolence, a private design for harm, from which society seeks protection in the law. Easy to deny and

indicate that Boren acted with the proscribed malice.

The evidence shows that the debtor deliberately failed to comply with the terms of the April 1981 security agreement. The evidence further shows that the debtor, at numerous times, lied about the existence of his 1981 crop in storage in order to receive an extension of time in which to repay his debt to MCPCA and obtain the additional funds he needed to plant his 1982 crop. The debtor continued to deceive MCPCA about the existence of his 1981 crop up to the time of MCPCA investigation of the situation. Even then he failed to admit that he had sold his 1981 crops until he was directly confronted with major discrepancies in his story. This pattern of conduct, by which the debtor concealed his initial failure to apply all the proceeds of his 1981 crop to MCPCA's loan clearly demonstrates the required malice for a debt to be nondischargeable under § 523(a)(6). Although we can understand the debtor's reasons for engaging in these actions, we cannot condone them.

Therefore it is the judgment of this court that the indebtedness of Richard Boren to the Mammoth Cave Production Credit Association is nondischargeable. This is a final order.

hard to prove, the secret state of mind may be laid bare, if at all, by reference to the acts of its creator").