In re: Joseph E. CARNEY, III, Debtor.

Beth T. ROSS, Plaintiff,

v.

Joseph E. CARNEY, III, Defendant.

Christine McGRATH, Plaintiff,

v.

Joseph E. CARNEY, III, Defendant.

Bankruptcy No. 85–465.
Adv. Nos. 85–103, 86–8.

United States Bankruptcy Court,
D. New Hampshire.

December 23, 1986.

## MEMORANDUM OPINION

*JAMES E. YACOS,* Bankruptcy Judge.

These two adversary proceedings bring before the court complaints by two young women injured in the same automobile accident, involving a vehicle driven by the debtor-defendant, that their claims for damages for their injuries are nondischargeable under § 523(a)(9) of the Bankruptcy Code. That section provides that a bankruptcy discharge does not discharge debts:

> "... to any entity, to the extent such debt arises from a judgment or consent decree entered in a court of record against the debtor wherein liability was incurred by such debtor as a result of the debtor's operation of a motor vehicle while legally intoxicated under the laws or regulations of any jurisdiction within the United States or its territories wherein such motor vehicle was operated and within which such liability was incurred ..."

The accident in question happened on July 17, 1979, at a time when the defendant was 17 years of age, and the plaintiffs were of comparable age. Prior to the bankruptcy filing on October 22, 1985, the plaintiff Ross had obtained a judgment in the state court for damages resulting from the accident. This judgment included a determination of the amount of damages. The plaintiff McGrath had not obtained a judgment prior to bankruptcy. The absence of a judgment prior to bankruptcy has been deemed immaterial under § 523(a)(9) of the Code. *In re Richards,* 59 B.R. 541, 14 B.C.D. 348 (Bankr.N.D.N.Y.

1986). Cf. also, *Dougherty v. Brackett,* 51 B.R. 987, 13 B.C.D. 443 (Bankr.D.Colo. 1985).

█ The trial in this matter was vigorously contested by both sides, with a number of witnesses and documentary evidence, including expert witnesses for both sides. The defendant contends that establishing nondischargeability under the statute requires proof meeting a "clear and convincing" standard. The defendant cites in support of this proposition the case of *In re Barrett,* 2 B.R. 296, 298 (Bankr.E.D. Penn.1980). The plaintiffs contend to the contrary that it is well-established that denial of discharge can be established by a mere preponderance of the evidence standard.

It is true that the *Barrett* decision has general language indicating broadly that a "clear and convincing" standard should be applied to nondischargeability issues. However, the *Barrett* case itself, and the cases it cites for support of its statement, all involve dischargeability questions involving a fraud element. The cases generally establish the proposition that a clear and convincing standard is applied only as to those nondischargeability issues involving fraud elements. See, *In re D'Annolfo,* 54 B.R. 887, 889 (Bankr.D.Mass.), and cases cited therein. Some bankruptcy courts have used a preponderance of evidence test even in fraud charges. *In re Baiata,* 12 B.R. 813 (Bankr.E.D.N.Y.1981); *In re Ramos,* 8 B.R. 490 (Bankr.W.D.Wisc.1981).

The evidentiary distinction regarding fraud-based dischargeability objections stems from a long history of case decisions under Section 17 of the old Bankruptcy Act, as well as the general proposition as to such issues noted in the case of *In re Huff,* 1 B.R. 354, 357 (Bankr.D.Utah 1979) ("Where dishonesty or fraud is at issue, the courts have typically required a higher standard of proof.").

It is unnecessary for present purposes to determine whether this court should adopt the position that the present Bankruptcy Code requires proof meeting a clear and convincing standard for fraud-based non-dischargeability issues. It is sufficient to note that the DWI type charge presently at trial does not involve any such fraud or dishonesty elements.

I also note that a district court has held that it is error for a bankruptcy judge to require more than a "preponderance of the evidence" standard in a dischargeability trial involving intentional torts of assault and battery. *In re Shepherd,* 56 B.R. 218 (W.D.Va.1985). To the extent that *In re Christianson,* 65 B.R. 157 (Bankr.W.D.Mo. 1986), indicates that as general proposition an objecting creditor to discharge has a "substantial" burden of proof *as an evidentiary matter* I decline to follow that decision. Such language normally is used to refer to the accepted principle that the scope of an exception to discharge *as a statutory construction matter* is subject to a "narrow construction" rule.

The preponderance of the evidence submitted to this court establishes the following facts:

(1) The plaintiffs and the defendant and one other young man proceeded to a drive-in movie on the night of the accident and arrived there at 8:30 p.m., after having first obtained a one-half gallon bottle of rum and four paper cups. They stayed at the drive-in movie until 11:15 p.m. and during that time consumed all but approximately one-half inch of the rum at the bottom of the bottle.

(2) The evidence establishes that the defendant consumed 14 ounces of the rum during that period. There is evidence that some pizza was eaten by the parties during their stay at the movie but the defendant does not recall how much he ate or drank at any specific time or any specific amounts. In the absence of any other evidence the court finds that the rum and/or any pizza was consumed by all parties equally and evenly throughout their stay at the drive-in movie.

(3) Under this factual picture, and based on the expert testimony received, I conclude that the defendant had absorbed substantially all the alcohol he had consumed

by the time of the accident at 11:45 p.m. that evening.

(4) The parties left the movie at 11:15 p.m. with the defendant driving the vehicle. The defendant drove around a bit and drove in a reckless and erratic manner, including leaving the road at various places and not staying within his lane at other places, to the extent that all three of the passengers requested him to stop the car because he was driving in that manner. The defendant did stop the car—in the middle of the road—but said nothing and proceeded on.

(5) The defendant was heading North on Route A1A, intending to reach a cut-off road leading to the East and the beach, but proceeded in a directly opposite Westerly direction on a dirt road off of the paved Route A1A; came back to Route 1 and turned North to the next dirt road; proceeded back Easterly on that dirt road (Atlantic Avenue) back to Route A1A.

(6) When he reached Route A1A again, coming out of the dirt road, the defendant did not stop but proceeded into the intersection at a speed of about 35 to 45 miles per hour, tried to turn North again on the paved road, skidded, and eventually ran the vehicle into a tree on Route A1A near the intersection.

(7) The accident occurred at 11:45 p.m. and the police arrived at the scene within five minutes thereafter. When they arrived the plaintiff Ross was pinned in the car and the plaintiff McGrath was lying on the ground near the car. The defendant was absent. He had left the scene immediately after the accident and proceeded on foot to the cut-off road and went down to the beach a considerable distance from the scene of the accident. He was not located by the police until over one-and-a-half hours later. He was sitting on a log on the beach when discovered.

Based on these facts, and on the defendant's own testimony of what he could recall, or more importantly what he could *not* recall, about the events of that evening, I conclude that the damages suffered by the plaintiffs were the results of the defendant

operating a vehicle while legally intoxicated within the meaning of the relevant New Hampshire Statutes. Those statutes provide as follows:

*N.H. R.S.A. 262–A:62 Intoxication or Under Influence of Drugs*

Any person who shall be convicted of operating or attempting to operate a motor vehicle upon any way while under the influence of intoxicating liquor.... shall.... be guilty of a violation and fined not more than $1,000, and his license or operating privilege shall be revoked for a period of not less than 60 days....

*N.H. R.S.A. 262–A:63 Evidence*

Upon complaint [of a violation of RSA 262–A:62] the court may admit evidence of the amount of alcohol in the defendant's blood at the time alleged.... Evidence that there was, at the time alleged, .10 percent, or more by weight of alcohol in his blood, is prima facie evidence that the defendant was under the influence of intoxicating liquor. The foregoing provisions of this section shall not be construed as limiting the introduction of any other competent evidence bearing upon the question of whether or not the defendant was under the influence of intoxicating liquor.

While the foregoing evidence is sufficient in my judgment to establish the nondischargeability of the claims in question, it should be noted that a considerable portion of the trial was taken up with additional evidence relating to a blood alcohol test administered to the defendant back at the police station at 1:45 a.m. The plaintiffs rely upon the results of that test as further support for a finding of legal intoxication at the time of the accident at 11:45 p.m. However, certain discrepancies in the way the test was administered (primarily a failure to purge the machine of ambient air immediately before the breath sample was taken from the defendant) together with various variables and complications resulting from the long delay in administering the test, due to the defendant's absenting

himself from the scene of the accident until he was found at the beach, render the results of that test unreliable in my judgment as an evidentiary matter. Accordingly, this decision is reached and based without any consideration of that test and its purported results.

 I have confined myself to only those facts established up to and at the time of the accident. To the objective facts recited above, it should also be added that the defendant in his own testimony demonstrated quite clearly that he was pretty well "blotted out" by his drinking at the drive-in movie. He did not have any idea of how much he ate or drank at the movie. He had no explanation whatsoever for turning West on the dirt road prior to the accident, even though his intention was to reach the beach to the East of Route A1A. He had no recall of other roads that he must have travelled upon to use up approximately thirty minutes from the time of leaving the drive-in movie to the time of the accident—a distance that normally could be covered in less than 15 minutes. He had no explanation as to why he got out of the wrecked car, leaving the two girls pinned in or thrown out of the car, and absented himself to the beach. He could only weakly state "I might have been looking for help."

Taking the defendant's demeanor and testimony on the stand, in conjunction with the objective facts established by the evidence, I conclude that the defendant was substantially impaired in his faculties by his drinking at the time of the accident and that that impairment was in fact the cause of the accident. The New Hampshire statute does not require a showing of blood alcohol in excess of a certain percentage to establish actionable intoxication. Such tests are simple rebuttable evidence as to "whether or not the defendant was under the influence of intoxicating liquor." The plaintiffs have met their burden of proof on that ultimate question of fact in my judgment.

A separate final judgment shall be entered in each adversary proceeding consistent with the foregoing of fact and conclusions of law.

## FINAL JUDGMENT

This case having come before the court for trial upon the complaint by the plaintiff to determine dischargeability of certain debts owing by the defendant-debtor; and the court having set forth separately its findings and conclusions in its Memorandum Opinion entered this date; and accordance therewith it is

ORDERED, ADJUDGED and DECREED as follows:

1. Judgment is entered in favor of the plaintiff, Beth T. Ross, with determination that the debts asserted in said complaint are nondischargeable in bankruptcy and that said plaintiff may proceed in assertion and enforcement of the same in the state courts or otherwise as she may be advised.

2. Each party to this adversary proceeding shall bear their own fees and costs.

## FINAL JUDGMENT

This case having come before the court for trial upon the complaint by the plaintiff to determine dischargeability of certain debts owing by the defendant-debtor; and the court having set forth separately its findings and conclusions in its Memorandum Opinion entered this date; and accordance therewith it is

ORDERED, ADJUDGED and DECREED as follows:

1. Judgment is entered in favor of the plaintiff, Christine McGrath, with determination that the debts asserted in said complaint are nondischargeable in bankruptcy and that said plaintiff may proceed in assertion and enforcement of the same in the state courts or otherwise as she may be advised.

2. Each party to this adversary proceeding shall bear their own fees and costs.