In re Jack D. SHOWALTER, Debtor.

John Z. ROWE, Mary J.
Rowe, Plaintiffs,

v.

Jack D. SHOWALTER, Defendant.

Bankruptcy No. 7–87–00469.
Adv. No. 7–87–0200.

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

May 27, 1988.

Jeffrey A. Crackel, Covington, Va., for plaintiffs.

Evans B. Jessee, Roanoke, Va., for defendant.

## MEMORANDUM OPINION

ROSS W. KRUMM, Bankruptcy Judge.

This case is before the court on the complaint filed by John Z. Rowe and Mary J. Rowe, pursuant to 11 U.S.C. § 523(a)(2), to have this court declare the debt owed the Rowes by Jack D. Showalter, non-dischargeable. Based upon the allegations made in the complaint, this court construes the complaint as one under § 523(a)(2)(A). The trial of this matter commenced on December 3, 1987. At the close of plaintiffs' evidence, counsel for the defendant requested the court to enter summary judgment in favor of the defendant. The appropriate motion at this stage of the proceedings is a motion for involuntary dismissal pursuant to Federal Rule of Civil Procedure 41(b). Rule 41(b) permits this court to determine the facts of the case and either render judgment against the plaintiff or decline to render any judgment until the close of all evidence. Fed.R.Civ.P. 41(b). In the proceedings at hand, counsel for the defendant indicated that the defendant would stand on his motion and that no further evidence would be introduced. Therefore, this court will render judgment based on the evidence presented.

### Findings of Fact

John and Mary Rowe became acquainted with the defendant, Jack D. Showalter, and the defendant's wife, Mary Showalter, through their mutual interests in the railroad business. John Rowe first came in contact with Jack Showalter's name through a railroad magazine. Because Mrs. Rowe operated a post card business in Florida, John Rowe contacted Mr. Showalter regarding the production of post cards bearing a photograph of the railroad owned and operated by Jack D. Showalter, the Alleghany Central. This contact resulted in an agreement for the Rowes to produce post cards bearing the picture of the Showalters' railroad for use in various railroad gift shops across the country. In addition to the business relationship, a personal relationship developed and the Rowes and the Showalters became friends. The Rowes came to Virginia on railroad business and called on the Showalters, both socially and professionally.

In August of 1976, the Rowes received a letter from Mary Showalter requesting that the Rowes lend the Showalters the sum of $5,000.00. The letter stated that the Showalters were in financial trouble. The Rowes loaned the Showalters the sum of $3,000.00. In February of 1978, the Showalters again contacted the Rowes and requested a loan of an additional $5,000.00. The Showalters offered collateral for the

loan and represented that Mr. Showalter, a builder, had some houses to finish which would provide a source of repayment. The Rowes made the $5,000.00 loan. In August of 1978, the Showalters again approached the Rowes for a $10,000.00 loan representing that the money was needed to keep Mr. Showalter from going to prison. On August 28, 1978, there was a wire transfer in the amount of $10,000.00 from the Rowes to the Showalters.

Sometime prior to Christmas in 1978, the Rowes agreed to have Jack Showalter build a house for them in the Clifton Forge area. It was understood that the house would be completed by March 1, 1979. During these late 1978 discussions, the Rowes advanced $10,000.00 toward construction of the home. This advance was in the form of a check post-dated to January 2, 1979. The Showalters represented to the Rowes, at that time, that they would apply the $18,-000.00 previously loaned, in addition to the check dated January 2, 1979, toward the cost of building the home.

The Rowes remained in Florida until February of 1979. During that time, they received reports from Mr. Showalter that construction was progressing and, in one instance, there was a specific representation that the roof was on the house. In late February, 1979, the Rowes moved to Covington, Virginia, anticipating, based on the representations of the Showalters, that their home would be completed by March 1, 1979. The Rowes arrived in Covington to find that no work had been done on their home at all. In fact, all the Rowes saw was two horses grazing in the field where the house was supposed to be erected. Upon inquiry, Mr. Showalter made the excuse that it was too wet to dig the foundation. The Rowes proceeded to move themselves and their possessions into a railroad car owned by the Showalters and continued to reside there for six weeks.

The Showalters also represented to the plaintiffs that the reason their home had not been completed was because Jack Showalter was currently involved in a construction project for a client by the name of Simanis. Showalter represented that addi-tional cash would be needed in order to finish the Simanis job but that as soon as that job was completed Showalter would get the cash back and have sufficient capital to commence construction on the Rowes' home. Showalter explained to the Rowes that his supplier, Bailey Lumber Co., cut off his supply of lumber for the Simanis project and that without additional funds he would not be able to purchase the fixtures he needed to obtain a draw. Based on those representations, the Rowes made the following loans to Showalter: March 1979—$3,000.00; April 3, 1979—$5,-000.00; April 9, 1979—$3,000.00; April 18, 1979—$10,000.00 (this was comprised of two separate transfers of $4,000.00 and $6,000.00 on the same day); and on April 27, 1979—$3,000.00. The April 27, 1979 transfer was induced by the representation of Jack Showalter that a truckload of supplies was enroute from Roanoke, Virginia, that those supplies were to be used in the construction of the Rowes' home, and that unless Jack Showalter had $3,000.00 in cash the truck would not be unloaded. The Rowes transferred the $3,000.00, however the truck never arrived in Covington.

The Rowes indicated to the Showalters that the April 27, 1979 transfer would be their final payment. Showalter responded by indicating that he would not finish the project without any further payments. Although the home was never finished in accordance with the specifications originally agreed upon, the Rowes were able to move into the premises and they received a deed to the property. Throughout all of the construction problems, the Rowes continued to honor their agreement with the Showalters to work on the Showalters' railroad and gift shop.

Finally the Rowes sued Showalter for their losses and judgment was entered on May 21, 1980, in the Circuit Court of Alleghany County for $44,500.00, plus costs and interest. It is that amount that the plaintiffs seek to have this court declare non-dischargeable under 11 U.S.C. § 523(a)(2).

880

*Law*

The Rowes bring this action under 11 U.S.C. § 523(a)(2)(A). In order for this court to declare a debt non-dischargeable under § 523(a)(2)(A), the Rowes must demonstrate that the debtor obtained money, property or services by false pretenses, false representation, or actual fraud. *In re Criswell,* 52 B.R. 184, 196 (Bankr.E.D.Va. 1985). The elements comprising false representation are: (1) the debtor made a representation; (2) the debtor knew the representation was false at the time it was made; (3) the debtor intended to deceive the creditor at the time the debtor received the money; (4) the creditor relied on the representation; and (5) the creditor sustained a loss as a result of that reliance. *Id.*

■ Although the court in *Criswell* required the plaintiff to prove each element by clear and convincing evidence the Fourth Circuit has since issued its opinion in *Combs v. Richardson,* 838 F.2d 112 (4th Cir.1988), holding that the proper burden of proof in a § 523(a)(6) proceeding is a preponderance of the evidence. The *Combs* decision states:

Congress had reasons for enacting the exceptions to discharge in bankruptcy embodied in § 523. While bankruptcy proceedings are intended to afford debtors a 'fresh start,' the provision at issue here expresses Congress' determination that debts incurred as the result of a debtor's willful and malicious injury of another are of a type that bankruptcy ought not to forgive. The balance of these competing policies does not require a heightened standard of proof of the § 523 exception, but does require that the bankruptcy court carefully determine that the prerequisites for collateral estoppel have been fully satisfied. Although lower courts are divided on the question of the appropriate standard of proof, *compare In re Shepherd,* 56 B.R. 218, 221 (W.D.Va.1985); *In re Boren,* 47 B.R. 293, 295 n. 8 (Bankr.W.D.Ky.1985); *In re Baiata,* 12 B.R. 813, 817 (Bankr.E. D.N.Y.1981) (applying preponderance of evidence standard) *with In re Peoni,* 67 B.R. 288, 290 (Bankr.S.D.Ind.1986); *Matter of Wintrow,* 57 B.R. 695, 703 (Bankr. S.D.Ohio 1986); *In re Capparelli,* 33 B.R. 360, 366 (Bankr.S.D.N.Y.1983) (applying clear and convincing evidence standard), we hold that the policies of the Bankruptcy Code are best effectuated by requiring that creditors prove by a preponderance of the evidence the willfulness and maliciousness of the debtors' acts under § 523(a)(6) and by waiting for Congress, not the courts, to signal a departure from this standard.

*Combs,* p. 116.

This court finds that the *Combs* decision is an expression by the Fourth Circuit that a preponderance of the evidence standard applies to all of the separate subparagraphs of § 523. Further, this standard was used in the Western District of Virginia prior to *Combs.* See, *In re Shepherd,* 56 B.R. 218, 221 (W.D.Va.1985). Thus, the standard of proof to be applied in this case will be a preponderance of the evidence.

The first element under § 523(a)(2)(A) requires a showing that Showalter actually made a representation. The Rowes attach significance to different representations for the various transfers. Regarding the first three transfers, the representations the Rowes have proved are (1) that the Showalters represented that they were in financial trouble, (2) that Showalter promised to repay the loans and (3) that Showalter promised to provide certain collateral to the Rowes. Any other representations regarding the first three transfers of money (totaling $18,000.00), were made after the money was transferred and therefore, do not apply.

■ One of the statements made prior to the transfer fails to rise to the level of a representation. To satisfy the representation element of § 523(a)(2), the Rowes must demonstrate that the representation was one of existing fact and not merely an opinion, expectation or declaration of intention. *Criswell* at 197. A mere promise to repay, and nothing more, does not rise to the level of a representation under § 523(a)(2). Regarding the remaining two statements, the Rowes failed to demon-

strate that Showalter knew they were false. As to the statement of financial trouble, no evidence was offered to show that the Showalters were not in such trouble. With respect to the offer of collateral, it was provided and then released by the Rowes.

■ The Rowes offered evidence of two representations for six of the remaining seven transfers. First, Mr. Rowe testified that Showalter represented to him that Bailey Lumber Company had cut off his supply of lumber and that Showalter needed money to buy fixtures to get a draw. The second representation, which is actually a sub-part of the first, is that a draw could not be obtained until Showalter received the materials. This court finds that these representations are representations of existing fact and are sufficient to satisfy the representation element of a case under § 523(a)(2). However, the Rowes have offered no evidence to prove that Showalter knew that these statements were false when made or that they were made with intent to deceive. Thus, the Rowes cannot prevail on six of the remaining transfers.

■ The final transfer, on April 27, 1979, was preceded by Showalter's representation that a truckload of supplies, for use in the construction of the Rowe home, was enroute from Roanoke, Virginia, and that unless Showalter could produce $3,000.00 cash the truck would not be unloaded. This court finds that the Rowes have introduced sufficient evidence regarding the falsity of the statements, Showalter's knowledge of falsity at the time the statements were made, and Showalter's intent to deceive the Rowes.

■ Given the long history of the transactions between the parties and the endless string of Mr. Showalter's failure or inability to keep his word, the court feels it necessary to evaluate the reliance factor as it applies to the last cash advance in this case. There is no requirement under 11 U.S.C. § 523(a)(2)(A) that a creditor "reasonably" rely on a debtors representation in order to have a debt declared non-dischargeable. In a recent decision, the Eighth Circuit held that the creditor need only prove that he relied on a debtor's fraudulent representations in order to have the debt declared non-dischargeable. *In re Ophaug*, 827 F.2d 340, 343 (8th Cir.1987). The *Ophaug* decision is grounded on the plain meaning of the statutory language of § 523(a)(2)(A) which has no "reliance" language as compared to § 523(a)(2)(B) which contains the wording "reasonably relied." The *Ophaug* court reasons that had Congress intended "reasonable reliance" in § 523(a)(2)(A), it would have included language to make that clear. The opinion also sets forth rationale for Congress' distinguishing the provisions of § 523(a)(2)(A) and § 523(a)(2)(B). *Id.*, at 343.

On the other hand, there are numerous decisions requiring plaintiffs to demonstrate, in varying degrees, reasonable reliance on the debtors representations. *E.g., In re Kimzey*, 761 F.2d 421, 423 (7th Cir.1985).

Another line of cases deciding the "reasonable" reliance issue takes the position that only reliance must be proved and that discharge will not be denied where a creditor's claimed reliance is so unreasonable as not to be actual reliance at all. One such case stands for the proposition that the reliance requirement should not be a rigorous one. *In re Phillips*, 804 F.2d 930, 933 (6th Cir.1986). Finally, in a § 523(a)(2)(B) context, the Seventh Circuit in *In re Garman*, 643 F.2d 1252 (7th Cir.1980), held that, "[T]he creditor need establish only its reliance in fact, although its claims to reliance cannot be so unreasonable as to defeat a finding of reliance in fact." *Garman*, 643 F.2d at 1258.

The court has considered the numerous opinions that attempt to either define reliance or determine whether the creditor must prove "reasonable reliance" in § 523(a)(2)(A) litigation. The cases which involve a non-commercial or "friendship" type transaction are limited in number. *Ophaug* is a friendship type transaction which involved one loan. In the non-commercial context or friendship type transaction, this court finds the *Ophaug* reasoning persuasive and holds that the creditor need establish only reliance.

■ The court finds that the Rowes have produced evidence sufficient to prove re-

882

liance on the representation of Showalter that a truck with their building supplies was coming from Roanoke and would not unload except that the sum of $3,000.00 was available to pay the driver. Therefore, all the elements of § 523(a)(2)(A) have been proved with respect to the last $3,000.00 cash advance and that portion of the debt will be non-dischargeable.

An appropriate order will be entered implementing this memorandum opinion.

### ORDER

For the reasons stated in the memorandum opinion attached hereto and made a part hereof, it is

### ORDERED:

That the plaintiffs' complaint to deny the defendant discharge is hereby DENIED with the exception of the last $3,000.00 cash advance which is non-dischargeable.

Copies of the order are to be mailed Jeffrey A. Crackel, Esquire, 275 W. Main Street, Covington, Virginia, 24426, counsel for the plaintiffs; and to Evans B. Jessee, Esquire, 404 Shenandoah Building, Roanoke, Virginia, 24011, counsel for the defendant.