**In re Raymond Scott BASHAM, Carolyn Sue Basham, Debtors.**

**Timothy SEERY, t/a Tim Seery Custom Homes, Ralph L. Seery, Plaintiff,**

v.

**Raymond Scott BASHAM, Carolyn Sue Basham, Defendant.**

**Bankruptcy No. 88–02855–NT.**

**Adv. No. 88–1478–NT.**

United States Bankruptcy Court, E.D. Virginia, Norfolk Division.

Oct. 6, 1989.

Martin K. Griffin, Virginia Beach, Va., for debtors.

M. Richard Epps, Epps & Brown, Virginia Beach, Va., for plaintiff.

MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

The plaintiffs brought their complaint against the debtors under 11 U.S.C. § 523(a)(2)(A) to determine the dischargeability of a debt in the amount of $14,900.00. Trial was held on July 13, 1989. The evidence received consisted of several exhibits and the testimony of plaintiff Timothy Seery ("Seery"). It is of at least passing significance that debtor Raymond Scott Basham ("Basham") did not appear at the trial for reasons not satisfactorily explained and notwithstanding the fact that his attorney filed a witness list stating Basham would be called as a witness in his own behalf. Debtor Carolyn Sue Basham is deceased.

Following trial the Court stated findings of fact and conclusions of law and ruled in favor of the plaintiffs. This opinion will

supplement the findings and conclusions previously stated by the Court.

## Findings of Fact

The debt arose from a $14,900.00 check delivered by the debtors to Seery and returned unpaid because of insufficient funds (NSF) in the debtors' checking account.

The circumstances of the transaction were as follows: By agreement dated November 28, 1986, Seery contracted to sell to the debtors a residence he had constructed in Chesapeake, Virginia. The contract stated a purchase price of $159,000.00 and required a $1,000.00 cash deposit which the debtors paid to Seery. The debtors lived in this property on a rental basis for approximately one year until settlement under the purchase contract on September 18, 1987.

On the evening prior to settlement, September 17, debtor Raymond Basham telephoned Seery and asked him to come by the debtors' home so they might deliver to him a check representing the balance of a 10 percent downpayment for their purchase. Seery complied and called on the debtors who explained to him they were being required to pay 10 percent cash toward the purchase price for the realty, with their mortgage loan comprising the balance of 90 percent. They then gave Seery their personal check in the amount of $14,900.00, assuring him that they had funds in their account for the check. Seery received additional assurance by Mr. Basham's statement that the mortgage lender had verified their bank account balance as one of the requirements for completing the loan.

During the year prior to this meeting, several of debtors' rent checks had been returned to Seery because of insufficient funds in the debtors' checking account; in fact, at the time the $14,900.00 check was delivered to Seery, debtors were indebted to him in the approximate amount of $1,800.00 representing returned checks for two months rent.

Nevertheless, Seery believed the debtors' representations that their $14,900.00 check was good. He wanted to settle with the debtors on the real estate contract and decided to take their check; as the debtors had previously made returned rental checks good, he believed he would collect the other sum owed by debtors at a later time.

Settlement under the real estate contract was held as scheduled on September 18, 1987, and as revealed in the HUD–1 settlement statement, debtors were given credit for a payment of $14,900.00 represented by the check delivered to Seery. Both debtors and Seery executed the settlement statement which contained a certification that, to the best of their knowledge, the statement accurately reflected all receipts and disbursements in the transaction. After settlement, Seery deposited the check to his account, and on September 29, 1987, he received notice from his bank that the check had been returned unpaid because of insufficient funds in debtors' account.

Seery turned the collection of the check over to his attorney, but the check was never made good. Although a collection suit was brought, the claim was not reduced to judgment before the debtors filed their chapter 7 petition.

Debtors' scheduled the Seery indebtedness in Schedule A–3 of their petition and did not indicate the debt was contested. However, after plaintiffs filed this adversary proceeding, debtor Raymond Basham claimed the $14,900.00 had been paid to Seery in cash.

## Discussion and Conclusions Of Law

The plaintiffs seek to except the debt of $14,900.00 from discharge under § 523(a)(2)(A) of the Bankruptcy Code. The burden of proof is on the creditor plaintiffs to establish the exception from discharge of their claim. *Williams v. Hart (In re Hart)*, 83 B.R. 840, 842 (Bankr.M.D. Ga.1987).

In the Court's view, the most critical issue in this case concerns the applicable standard of proof required of the plaintiffs.

A majority of cases considering the standard of proof in dischargeability cases have applied a clear and convincing standard, particularly in fraud situations. *See Knoxville Teachers Credit Union v. Parkey*, 790 F.2d 490, 491 (6th Cir.1986)

(§ 523(a)(2)); *Driggs v. Black (In re Black)*, 787 F.2d 503, 506 (10th Cir.1986) (§ 523(a)(2)); *Great American Ins. Co. v. Storms (In re Storms)*, 28 B.R. 761, 765 (Bankr.E.D.N.C.1983) (embezzlement under § 523(a)(4)); *Clark v. Taylor (In re Taylor)*, 58 B.R. 849, 855 (Bankr.E.D.Va.1986) (embezzlement under § 523(a)(4)); *Taylor v. Kaufmann (In re Kaufmann)*, 57 B.R. 644, 646 (Bankr.E.D.Wis.1986) (§ 523(a)(2) (A) and (a)(6)); *American Honda Fin. Corp. v. Loder*, 77 B.R. 213, 215 (N.D.Iowa 1987) (§ 523(a)(6)); *First Valley Bank v. Ramonat (In re Ramonat)*, 82 B.R. 714, 720 (Bankr.E.D.Pa.1988) (embezzlement under § 523(a)(4)).

Decisions applying the preponderance of evidence standard to § 523(a) include: *Mammoth Cave Production Credit Ass'n v. Boren (In re Boren)*, 47 B.R. 293, 295 n. 8 (Bankr.W.D.Ky.1985) (§ 523(a)(6)); *Ross v. Carney (In re Carney)*, 68 B.R. 655, 657 (Bankr.D.N.H.1986) (§ 523(a)(9)); *Stern v. Dubian (In re Dubian)*, 77 B.R. 332, 339 (Bankr.D.Mass.1987) (§ 523(a)(6)).

This Court considered the split of authority on the standard of proof in § 523(a)(9) cases (judgment debt incurred in operating a motor vehicle while legally intoxicated) and held that the preponderance standard should apply. *Whitson v. Middleton (In re Middleton)*, 100 B.R. 814 (Bankr.E.D.Va. 1988), *aff'd* No. 89–103N (E.D.Va. April 12, 1989), *appeal docketed* No. 89–2689 (4th Cir. May 2, 1989). Other cases under § 523(a)(9) include *Ross v. Carney (In re Carney)*, 68 B.R. 655 (preponderance); *State Farm Mut. Auto. Ins. Co. v. Wright (In re Wright)*, 66 B.R. 403 (Bankr.S.D.Ind. 1986) (clear and convincing); *Commercial Union Ins. Co. v. Christianson (In re Christianson)*, 65 B.R. 157 (Bankr.W.D. Mo.1986) ("substantial" evidence required);

*Beneficial Consumer Discount Co. of Lancaster, Pennsylvania v. Barrett (In re Barrett)*, 2 B.R. 296 (Bankr.E.D.Pa.1980) (clear and convincing). It should be noted that Bankruptcy Judge Yacos in *Carney* concluded that the clear and convincing standard was limited to "dischargeability questions involving a fraud element". *In re Carney*, 68 B.R. at 657.

The Court of Appeals for the Fourth Circuit in *Combs v. Richardson*, 838 F.2d 112 (4th Cir.1988), has suggested that the appropriate standard of proof to be applied in this Circuit in cases under § 523(a) is by preponderance of evidence. The specific holding in *Combs* was that under § 523(a)(6) a creditor must prove that a debtor's acts were willful and malicious by a preponderance of evidence. *Combs*, 838 F.2d at 116. Yet, *Combs* employs broad language indicating the holding is not limited to § 523(a)(6) cases. The Fourth Circuit wrote:

> The Bankruptcy Code is silent as to the standard of proof necessary to establish the exceptions to discharge in § 523. In the face of this silence, courts may not imply a higher standard than the preponderance standard normally applied in civil proceedings.

838 F.2d at 116. Citing six cases, *Combs* notes that lower courts are divided on the question of appropriate burden of proof. The cases cited are not only willful and malicious conduct cases under Section 523(a)(6) but also fraud and embezzlement cases under Section 523(a)(2) and (a)(4).[1]

Because of the consistent reference to Section 523 generally and the cases cited to demonstrate the division of the lower courts, *Combs* can be interpreted as standing for the proposition that in the Fourth Circuit, the proper burden of proof under

---

1. *Mammoth Cave Production Credit Ass'n v. Boren (In re Boren)*, 47 B.R. 293 (Bankr.W.D.Ky. 1985) (The burden of proof under Section 523(a)(6) is by a fair preponderance of the evidence.); *Bottari v. Baiata (In re Baiata)*, 12 B.R. 813 (Bankr.E.D.N.Y.1981) (The plaintiff sought to have the debts owed to her declared nondischargeable under Section 523(a)(2)(A), (a)(2)(B), (a)(4) and (a)(6); the court concluded that the correct standard of proof in § 523 dischargeability proceedings is a fair preponderance of the evidence.); *Morehead v. Peoni (In re*

*Peoni)*, 67 B.R. 288 (Bankr.S.D.Ind.1986) (Under Section 523(a)(6) burden of proof is clear and convincing.); *Shafer v. Wintrow (In re Wintrow)*, 57 B.R. 695 (Bankr.S.D.Ohio 1986) (Law governing exceptions to discharge under §§ 523(a)(2)(A) and 523(a)(6) is to be narrowly construed against the exception.); *McGovern v. Capparelli (In re Capparelli)*, 33 B.R. 360 (Bankr. S.D.N.Y.1983) (In a § 523(a)(6) case the court concluded that the creditor must establish the elements by clear and convincing proof.).

Section 523 is by a preponderance of the evidence. *See also, Rowe v. Showalter (In re Showalter)*, 86 B.R. 877, 880 (Bankr.W. D.Va.1988), *Kleiner v. Daboul (In re Daboul)*, 85 B.R. 197, 200, 17 B.C.D. 660, 662 (Bankr.D.Mass.1988).

Chief Judge Martin V.B. Bostetter, Jr., of this district, has distinguished the holding of *Combs v. Richardson*, and held that an exception to discharge under § 523(a)(2) must be proven by clear and convincing evidence. *Cowher's Trucking, Inc. v. Zack (In re Zack)*, 99 B.R. 717 (Bankr.E.D.Va. 1989). However, in another decision, Judge Ross W. Krumm of the Western District of Virginia applied the preponderance standard in a § 523(a)(2) proceeding. *Rowe v. Showalter (In re Showalter)*, 86 B.R. at 877.

Bankruptcy Judge Arthur J. Spector has recently considered standard of proof in detail. *Borg–Warner Acceptance Corp. v. Watkins (In re Watkins)*, 90 B.R. 848 (Bankr.E.D.Mich.1988). Noting the split of authority as to the appropriate standard of proof, Judge Spector observes that no previous bankruptcy opinion had thoroughly analyzed this question under § 523(a); he has filled the void with an exhaustive study of the purpose of burdens of proof in our judicial system and under bankruptcy law. Although *In re Watkins* involved a discharge action under Code Section 523(a)(6), the analysis of this opinion is helpful here.

Judge Spector notes that standards of proof represent an attempt to instruct the factfinder on the degree of confidence our society requires in the correctness of factual conclusions for a particular type of adjudication. Since the factfinder may sometimes be wrong, standards of proof help to distribute risks. *In re Watkins*, 90 B.R. at 853. The court explains:

> There is always in litigation a margin of error, representing error in factfinding, which both parties must take into account. Where one party has at stake an interest of transcending value—as a criminal defendant his liberty—this margin of error is reduced as to him by the process of placing on the other party the burden of persuading the factfinder at the conclusion of the trial of his guilt beyond a reasonable doubt.

*In re Watkins*, 90 B.R. at 854 (quoting *Speiser v. Randall*, 357 U.S. 513, 525–526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958)).

According to Judge Spector, the preponderance standard is used when both parties share risks equally. In a typical civil case involving a monetary dispute between private parties, society has minimum concerns with the outcome; thus, the burden of proof is by a mere preponderance of the evidence. Both parties share in the risk of error. *In re Watkins*, 90 B.R. at 855. The court also notes that in most other civil actions involving mere economic interests courts likewise use nothing higher than a preponderance standard. Bankruptcy legislation focuses more on economic rights rather than on rights of liberty; therefore, Judge Spector concludes:

> The value of a discharge in bankruptcy, then, is not so great as to justify placing a higher burden upon a plaintiff in a § 523 adversary proceeding. If a debtor is denied discharge as to a particular debt, he merely remains subject to the same risks and burdens of any other debtor outside of bankruptcy. The debtor and his creditor having nothing to lose but the possibility of having to pay, or of being able to collect, money should the factfinder err. Thus, there is no sound reason to require a heightened burden of proof.

*Id.* at 856.

■ This Court agrees with Judge Spector's analysis and reasoning and believes that his opinion, along with *Combs v. Richardson*, provides a basis for resolving the diverse case holdings on standard of proof. As his opinion illustrates, there is no compelling reason for different standards of proof in § 523(a) litigation. To the contrary, there should be a single standard of proof, that of preponderance of evidence.

This Court will therefore not follow Judge Bostetter's *In re Zack* decision, and will apply the preponderance standard in this proceeding.

11 U.S.C. § 523(a)(2) provides an exception to discharge of a debt

> for ... property ... to the extent obtained by—(A) false pretenses, a false representation, or actual fraud....

There can be no question here that debtors obtained property from the plaintiffs. The other necessary elements to a determination of nondischargeability under § 523(a)(2)(A) are

(1) That the debtor made misrepresentations,

(2) That at the time the debtor knew the representations were false,

(3) That the debtor made the misrepresentations with the intention and purpose of deceiving the creditor,

(4) That the creditor relied on the representations, and

(5) That the creditor sustained loss and damage as the proximate result of the misrepresentations.

*See Sweet v. Ritter Finance Co.,* 263 F.Supp. 540, 543 (W.D.Va.1967).

With respect to the issuance of a bad check, most courts hold that this is not in itself a sufficient act to establish that a resulting debt is excepted from discharge. The creditor must still establish that the debtor had the intention to deceive the creditor at the time the check was given. *See Comerica Bank–Detroit v. Nahas (In re Nahas),* 92 B.R. 726 (Bankr.E.D.Mich. 1988); *Georgetown Village Apts. v. Fontana (In re Fontana),* 92 B.R. 559 (Bankr.M. D.Ga.1988) (Case involved a stop payment on a check and not an NSF check.); *Charlie Kelton's Pontiac, Cadillac, Oldsmobile & Isuzu Truck, Inc. v. Roberts (In re Roberts),* 82 B.R. 179 (Bankr.D.Mass.1987); *Aircon Distributors, Inc. v. Holt (In re Holt),* 24 B.R. 696 (Bankr.E.D.Va.1982).

Since the court seldom has direct insight into the heart and mind of a perpetrator of fraud, the question of intent must usually be resolved by an examination of surrounding circumstances. *In re Roberts,* 82 B.R. at 184.

The bad check fraud cases cited above illustrate that the plaintiffs have a somewhat difficult burden to establish the essential element of the debtors' fraudulent intent, particularly at the time the check was given. Here, while the debtors represented at delivery that their account held funds to pay the check, the plaintiffs have produced no documentary evidence of what funds were in the debtors' checking account at that time. The fact that eleven days later the check was returned for insufficient funds ordinarily might not in itself establish the requisite fraudulent intent at the inception of the transaction.

However, this case is distinguishable from the usual bad check case. It is clear that the real property purchase was intended by all parties to be a cash transaction. Debtors not only represented to Seery they had the cash for the downpayment, they further assured Seery that their mortgage lender had verified they had the cash as a condition of receiving the loan. In substance then, the debtors represented that their check was the equivalent of cash, and their failure to make it good when presented for payment is a circumstance indicating a fraudulent intent.

The Court also places weight on the evidence of record that Raymond Basham has claimed as a defense to the dischargeability complaint not that he lacked fraudulent intent in giving a check later returned NSF (a typical defense), but he claims to have paid Seery the $14,900.00 in cash. This position was pursued in Basham's absence at trial by his counsel who submitted into evidence a receipt signed by Seery and both debtors on September 18, 1987. This receipt stated:

I have received of Ray and Carolyn Basham $14,900.00 as additional deposit monies for closing in cash on this date.

How Basham hoped to establish he paid cash in the face of his returned check is unknown. However, on cross examination, Seery completely refuted any defense of a cash payment by debtors on September 17 or September 18. Given plaintiffs' rebuttal of the payment defense, the defendants' receipt exhibit actually supports plaintiffs' case, since it is a written acknowledgment by the debtors at the time of settlement that the transaction was all cash.

Raymond Basham's failure to appear at trial is not a factor that may be considered in support of plaintiffs, who have the burden of proof in this adversary proceeding. However, Seery was a credible witness in

behalf of plaintiffs' position, and the Court finds his unchallenged evidence sufficient to carry the plaintiffs' burden of proof by a preponderance of the evidence. Plaintiffs' evidence does not meet the clear and convincing standard.

Because the Court accepts the preponderance standard as sufficient, I hold that the indebtedness represented by the $14,-900.00 check passed by the debtors to Seery is excepted from discharge under § 523(a)(2)(A). To reiterate, the Court is satisfied that the debtors with intent to defraud gave Seery a bad check; that the debtors explicitly misrepresented the check was supported by funds when they knew it was not; that the debtors intended to deceive the plaintiff; and that the plaintiff reasonably relied upon the debtors' misrepresentation for which loss was suffered in the amount of the check. As a direct result of the debtors' false representations, they acquired plaintiffs' real property for significantly less than the stipulated purchase price.

A separate order will be entered excepting from discharge the $14,900.00 indebtedness owed the plaintiffs by the debtors pursuant to 11 U.S.C. § 523(a)(2)(A).